IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DON EUGENE COE, II,

        **Plaintiff,**

v.                    //    CIVIL ACTION NO. 1:11CV113
                               (Judge Keeley)

OUTBACK STEAKHOUSE OF FLORIDA,
LLC, d/b/a Outback Steakhouse,
OS RESTAURANT SERVICES, INC.,
d/b/a Outback Steakhouse, and
OSI RESTAURANT PARTNERS, LLC,
d/b/a Outback Steakhouse,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

Pending before the Court is the defendants' motion for summary judgment (dkt. no. 44), which is fully briefed and ripe for review. For the reasons that follow, the Court **GRANTS** the defendants' motion and **DISMISSES** the plaintiff's claims **WITH PREJUDICE.**

### I.

The plaintiff, Don Eugene Coe II ("Coe"), sued his former employer, Outback Steakhouse of Florida, LLC, d/b/a Outback Steakhouse, OS Restaurant Services, Inc., d/b/a Outback Steakhouse, and OSI Restaurant Partners, LLC, d/b/a Outback Steakhouse (collectively "the defendants" or "Outback"), seeking damages for an injury he allegedly sustained during the course of his employment. At the time of his injury, Coe was employed as a "prep cook" at the Outback Steakhouse restaurant located in Morgantown,

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

West Virginia. On June 29, 2009, he suffered a tibial plateau fracture when he fell on broken and cracked tiles in the kitchen. Several months later, on December 14, 2009, he slipped on water on the same kitchen floor, further aggravating his injury.

On June 28, 2011, Coe filed this action in the Circuit Court of Monongalia County, West Virginia, asserting a deliberate intent claim against Outback under W. Va. Code § 23-4-2(d)(ii). Outback timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 on July 26, 2011, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. Following the close of discovery, Outback filed the pending motion, in which it argues that Coe cannot establish all of the elements required to prove a deliberate intent claim. (Dkt. No. 44).

### II.

### A.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the

2

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). At the same time, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

3

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

### B.

The West Virginia's Workers' Compensation Act generally immunizes covered employers from employee suits for "damages at common law or by statute" resulting from work-related injuries. W. Va. Code § 23-2-6. An employer loses this immunity, however, when it acts with "deliberate intention," id. § 23-4-2(d)(2), and an employee may file an action for damages in excess of workers' compensation benefits. Id. § 23-4-2(c).

Subsections (d)(2)(i) and (d)(2)(ii) of § 23-4-2 provide two distinct methods of proof by which a plaintiff may establish that an employer acted with "deliberate intention." Here, the plaintiff has asserted his claim pursuant to subsection (d)(2)(ii), under which employer immunity is lost if the plaintiff proves each of the following five elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by

4

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

competent evidence of written standards or guidelines
which reflect a consensus safety standard in the industry
or business, which statute, rule, regulation or standard
was specifically applicable to the particular work and
working condition involved, as contrasted with a statute,
rule, regulation or standard generally requiring safe
workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set
forth in subparagraphs (A) through (C), inclusive, of
this paragraph, the employer nevertheless intentionally
thereafter exposed an employee to the specific unsafe
working condition; and

(E) That the employee exposed suffered serious
compensable injury or compensable death as defined in
section one, article four, chapter twenty-three whether
a claim for benefits under this chapter is filed or not
as a direct and proximate result of the specific unsafe
working condition.

W. Va. Code. § 23-4-2(d)(2)(ii).

The deliberate intent statute expressly directs that "the
court shall dismiss the action upon a motion for summary judgment
if it finds . . . that one or more of the facts required to be
proved by the provisions of subparagraphs (A) through (E),
inclusive, paragraph (ii) of this subdivision do not exist." Id.
§ 23-4-2(d)(2)(ii)(B). "'Thus, in order to withstand a motion for
summary judgment, a plaintiff must make a prima facie showing of
dispute on each of the five factors.'" Marcus v. Holley, 618 S.E.2d
517, 529 (W. Va. 2005) (quoting Mumaw v. U.S. Silica Co., 511
S.E.2d 117, 120 (W. Va. 1998)).

5

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

### III.

Outback argues that Coe cannot establish the prima facie elements for subsections (A)-(D) of a deliberate intent cause of action. The Court agrees. As the following discussion establishes, Coe has failed to demonstrate the existence of a genuine issue of material fact as to any of these prerequisites, and his failure to meet any one, standing alone, would be sufficient to grant Outback's motion for summary judgment.

### A.

Outback first argues that Coe cannot establish the "specific unsafe working condition" requirement in subsection (A), which requires the existence of "a specific unsafe working condition . . . which presented a high degree of risk and a strong probability of serious injury or death." W. Va. Code. § 23-4-2(d)(2)(ii)(A). Coe contends that he has put forth a prima facie showing that the "condition of the floor," which was "riddled with broken tiles," was a specific unsafe working condition. (Dkt. No. 46 at 5).

The plain language of subsection (A), however, "require[s] plaintiffs to present evidence indicating something considerably more than a mere 'possibility' or even a 'reasonable probability' of serious injury or death." Baisden v. Omega Coal Co., No. 2:11-079, 2012 WL 259949, at *8 (S.D. W. Va. Jan. 27, 2012). It is

6

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]
_____

not enough, in other words, for a plaintiff to simply demonstrate
"that an unsafe working condition <u>could</u> produce an injury." <u>Id.</u> at
*9 (emphasis added). Rather, as the statute dictates, a plaintiff
must establish that the unsafe working condition presents both a
"high degree of risk" and "strong probability of serious injury or
death." W. Va. Code. § 23-4-2(d)(2)(ii)(A); <u>see also</u> <u>Marcus v.</u>
<u>Holley</u>, 618 S.E.2d 517, 528 (W. Va. 2005).

Coe contends that "there was a strong possibility that someone
would become seriously injured" due to the condition of the floor
tiles, "as Mr. Coe alleges that other employees had fallen in the
restaurant, one sustaining a broken jaw." (Dkt. No. 46 at 5). In
support of this argument, he offers his own deposition testimony
that he had read "doctors' notes" that were "hanging on the wall"
of an office in Outback, indicating that "one [employee] fell and
got stitches." (Dkt. No. 54 at 10). Coe, however, did not witness
this alleged fall, could not identify the involved employee, and
could not provide any details regarding the circumstances or
location of this incident. <u>Id.</u> Coe also testified that he had once
observed a <u>customer</u> (not, as alleged in the briefing, an employee)
"f[a]ll, hit her face on the wood, and br[eak] [both] her arm" and
her jaw at the "front of the house," a term that refers to the
dining room, not the kitchen. (Dkt. No. 54 at 14). Coe did not

7

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

identify the customer or provide any further details of this incident. Id.

Outback, in response, points to the depositions of three Morgantown Outback employees: Michael Gilchrist, a former Manager, Jeff Kramer, a former a Kitchen Manager, and Tyler Kramer, a former Assistant Kitchen Manager. All three uniformly testified that they were unaware of any other incidents in which employees had sustained injuries from falling on the kitchen floor. (Dkt. No. 45-5 at 5); (Dkt. No. 45-7 at 2); (Dkt. No. 45-8 at 3). Mr. Gilchrist testified that he was aware of only one incident where an employee had been injured in a fall, a "busser" who had "tripped over a barstool" at the front of the house. (Dkt. No. 45-5 at 6).

Here, Coe has failed to offer any competent evidence indicating that the condition of the kitchen floor presented a high degree of risk and strong probability of serious injury or death. His testimony regarding "doctors' notes" he read in passing is wholly unsupported by any corroborating evidence in the record and constitutes speculation of the highest degree. See Runnebaum v. NationsBank, 123 F.3d 156, 164 (4th Cir. 1997) (holding that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion"). Similarly, his unsubstantiated report of a customer's fall, which occurred at a different area of the

8

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

restaurant and for unknown reasons, bears no reasonable
relationship to the degree of risk presented by the kitchen floor.
See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (non-moving
party "cannot create a genuine issue of material fact through mere
speculation or the building of one inference upon another").

Cracked tiles and wet floors, in and of themselves, are
ordinary hazards that are not necessarily so unsafe as to present
"a high degree of risk and a strong probability of serious injury
or death." W. Va. Code. § 23-4-2(d)(2)(ii)(A). While Coe, by virtue
of his own injuries, has at least demonstrated that the broken
tiles could possibly result in a serious injury, he has not
otherwise met his burden of setting forth evidence that would
create a genuine issue of material fact as to whether the condition
of the kitchen floor presented a "high degree of risk" and "strong
probability of serious injury or death." W. Va. Code. § 23-4-
2(d)(2)(ii)(A); see also Baisden, 2012 WL 259949, at *8. As such,
he has failed to meet his prima facie burden as to the first
element of his deliberate intent claim.

### B.

Outback next argues that Coe cannot establish the "actual
knowledge" requirement in subsection (B), which requires that an
employer must know of both the specific unsafe working condition

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

and that it presents a "high degree of risk and the strong
probability of serious injury or death." W. Va. Code. § 23-4-
2(d)(2)(ii)(B). Coe argues that Outback "subjectively realiz[ed]"[1]
that the floor was dangerous for three reasons: (1) he and Tyler
Kramer, the Assistant Kitchen Manager, had previously complained
about the condition of the kitchen floor; (2) another employee
"reportedly" had fallen on the kitchen floor;[2] and (3) the
Monongalia Health Department had cited Outback "several times"
regarding the disrepair of the kitchen floor. (Dkt. No. 46 at 7).

The West Virginia Supreme Court of Appeals has described the
"actual knowledge" standard as "a high threshold that cannot be
successfully met by speculation or conjecture." Mumaw, 511 S.E.2d

---

[1] The legislature amended W. Va. Code § 23-4-2(d)(2)(ii)(B) in
2005, replacing the phrase "[t]hat the employer had a subjective
realization and appreciation of the existence of the specific
unsafe working condition" with the phrase "[t]hat the employer,
prior to the injury, had actual knowledge of the existence of the
specific unsafe working condition." Coleman Estate ex rel. v. R.M.
Logging, Inc., 664 S.E.2d 698, 702 n. 7 (W. Va. 2008) (emphasis
added). This change, however, "ma[kes] no practical difference in
interpreting the statute." Skaggs v. Kroger Company/Kroger Ltd.
Partnership I, 788 F.Supp.2d 501, at 508 n.6 (S.D. W. Va. 2011)
(citing Syl. Pt. 3, Blevins v. Beckley Magnetite, Inc., 408 S.E.2d
385 (W. Va. 1991)).

[2] As already discussed, the Court rejects the unsubstantiated
allegation of similar employee accidents as both speculative and
belied by the evidence of record. It is thus not probative of
Outback's "actual knowledge" and need not be addressed further.

10

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

at 123. Moreover, "[t]his requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition." Id. "Instead, it must be shown that the employer actually possessed such knowledge." Id.

"[T]he type of evidence presented to establish the requisite subjective knowledge on the part of the employer often has been presented as evidence of prior injuries or of prior complaints to the employer regarding the unsafe working condition." Ryan v. Clonch Indus., 639 S.E.2d 756, 765 (W. Va. 2006). Cases addressing the "actual knowledge" requirement have considered several factors, including:

> (1) whether any prior injuries had occurred because of the condition; (2) whether the employer previously had been cited by government officials for the violation; and (3) whether there had been any prior complaints that would have put the employer on notice of the high degree of risk and strong probability of serious injury or death created by the condition.

Baisden, 2012 WL 259949, at *9 (citing Blevins, 408 S.E.2d at 391-93). Evidence of prior similar incidents or complaints, however, is not mandated by § 23-4-2(d)(2)(ii). Syl. Pt. 2, Nutter v. Owens-Illinois, Inc., 550 S.E.2d 398, 399 (W. Va. 2001).

11

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

Coe first argues that Outback had "actual knowledge" of the specific unsafe working condition at issue in this case because he and Tyler Kramer had complained about the condition of the kitchen floor. Coe's deposition testimony indeed indicates that he has made generalized complaints "about the whole restaurant conditions itself [sic]," and that he had complained about the floor "in the whole restaurant pretty much." (Dkt. No. 45-1 at 5). He was unable, however, to identify "any certain date or any certain time when [he] complained about just one thing," and he testified that he had not specifically complained about the condition of the area in which he fell. Id. Tyler Kramer, similarly, testified that he had complained about the presence of water on the kitchen floor and some missing tiles in certain areas of the kitchen, but that he had not complained about "the area where [Coe] fell." (Dkt. No. 45-8 at 3). Kramer testified that his complaints stemmed from observing employees trip in the kitchen, although "nothing serious happened – came from any of them." (Dkt. No. 45-8 at 3).

In addition to these general complaints, Coe contends that the "actual knowledge" requirement is satisfied because Outback had been repeatedly cited by the Monongalia Department of Health "regarding the disrepair of the floor." (Dkt. No. 46 at 7). In support, he offers several Food Establishment Inspection Reports

12

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

("Health Department Reports") citing the Morgantown Outback for, inter alia, having "[f]loors in poor repair" and "standing water in storage room" on April 28, 2005 (dkt. no. 49 at 3), for "floor[s] [in] poor repair" on December 12, 2008, id. at 5, and for "floor[s] in poor repair" and "roof in poor repair (leaking on floor)" on March 29, 2010, id. at 7-8. Coe also points to a March 29, 2010 receipt from Ecolab Pest Elimination Division noting that "floor tiles or baseboards loose/missing. The grout is in need of repair thru [sic] the kitchen. Please repair to eliminate potential pest harborage / breeding site." Id. at 13.

Outback, in response, argues that Coe and Kramer's generalized complaints about the condition of the floor are insufficient to impute knowledge that the floor, particularly in the area where Coe was injured, created a strong probability of serious injury or death. In that same vein, it relies upon the testimony of Chris Nestor, a Health Department Sanitarian and author of a majority of the Health Department Reports at issue in this case, to argue that his inspections - and citations - primarily concern the "food aspect of the facility," and not the identification of potential safety hazards for employees. (Dkt. No. 45-11 at 4). As Nestor testified, a cracked or missing tile would render a floor in "poor repair" because "everything in the facility has to be easily

13

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

cleaned" to ensure sanitary food preparation, and not necessarily because it created a tripping hazard. Id. A roof leak, too, would be a violation because of the potential for food contamination, not because it created a slipping hazard. Id. at 5. He was not, as he stressed, a "safety inspector" for workplace hazards. Id. at 4.

Outback also points out that the available Health Department Reports most proximate to Coe's initial fall, which occurred on June 29, 2009, do not cite Outback for having "floors in poor repair." Specifically, the two reports immediately preceding Coe's initial fall, issued on December 22, 2008, and May 20, 2009, respectively, contained no mention of, or citation for, the condition of the floor. (Dkt. No. 45-10 at 20, 21).[3] The available reports following Coe's initial fall and preceding his second fall, which were issued on August 18, 19, 20, and 29, 2009, similarly fail to mention the physical condition of floor. Id. at 17, 18, 22, and 23. The August 18, 2009 report does cite Outback because the

---

[3] Contrary to Coe's contentions, the fact that Outback contracted with a flooring company to replace certain tiles between February 13, 2009 and March 17, 2009, several months after the December 12, 2008 violation and several months before his June 29, 2009 fall, does not support the wildly speculative allegation that Outback must have "realiz[ed] that the kitchen floor was unsafe." (Dkt. No. 46 at 7). If anything, it simply supports the defendants' contention that the condition of the floor on the date of Coe's fall was different from its condition during the Health Department's December 12, 2008 inspection.

14

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

"ice machine [was] leaking on the floor," but, as the defendants point out, the subsequent August 19, 20, and 29 reports contain no mention of a leaky ice machine. Id. Given the content and purpose of these citations, Outback argues, they would not put it on notice that the condition of the floor presented a high degree of risk and strong probability of serious injury or death. W. Va. Code § 23-4-2(c)(2)(ii)(B).

Viewing the facts in the light most favorable to the plaintiff, Coe has established, at the very most, that Outback was aware that the kitchen floor was in a state of general disrepair. The deliberate intent statute, however, also requires him to show that Outback realized the "high degree of risk and the strong probability of serious injury or death presented by [the] specific unsafe working condition." W. Va. Code § 23-4-2(c)(2)(ii)(B); see also Ryan, 639 S.E.2d at 765. He has failed to carry this burden.

Here, neither Coe nor Kramer indicated that they had communicated anything to Outback other than generalized complaints regarding the ordinary hazards of a heavily utilized tile floor. Moreover, even had Coe adequately communicated the specific dangers he perceived, there is no indication that the management of Outback would have agreed with his assessment. See Harbolt v. Steel of West Virginia, Inc., 640 F.Supp.2d 803, 813 (S.D. W. Va. 2009) ("in some

15

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

circumstances, an employer may lack the subjective realization of
the risk presented by a dangerous condition, notwithstanding
complaints about that condition" (citing Blevins v. Beckley
Magnetite, Inc., 408 S.E.2d 385, 387-388, 393 (W. Va. 1991)).
Indeed, Outback has identified at least two other employees
familiar with the floor in question who did not consider it to be
dangerous. See (Dkt. No. 45-9 at 2) (declaration of twelve-year
employee that "never had any safety concerns" about the condition
of the floors); (Dkt. No. 45-7 at 2) (deposition testimony of Jeff
Kramer that he never felt the condition of the floor was unsafe).
Coe, on the other hand, has amassed no corroborating evidence in
support of his point of view. See generally Harbolt, 640 F.Supp.2d
at 813 (drawing similar comparison).

     Nor has Coe presented competent evidence that, prior to his
accident, some other employee had been injured, much less seriously
injured, as a result of the condition of the floor. Such prior
injuries, although not required, are probably the most common
avenue for establishing employer knowledge of a dangerous
condition. See Syl. pt. 2, Nutter, 550 S.E.2d 398. His argument
instead rests on several cherry-picked Health Department Reports
and a post-accident receipt for pest control services, both of
which are tied to public health concerns and are wholly inapposite

16

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

to the question of the degree of risk and likelihood of injury
presented by workplace hazards. In particular, and as discussed in
more detail later in this Opinion, the Health Department Reports
involve violations of the FDA Food Code and are simply not
probative of the level of danger the floor may have presented to
Outback's employees.

Critically, the "actual knowledge" requirement of W. Va. Code.
§ 23-4-2(d)(2)(ii)(B) "is not satisfied merely by evidence that the
employer reasonably should have known of the specific unsafe
working condition and of the strong probability of serious injury
or death presented by that condition," nor by "speculation or
conjecture." Mumaw, 511 S.E.2d at 123. Here, the uncontradicted
evidence is that Outback did not view the condition of the kitchen
floor as posing a high risk and strong probability of serious
injury. The plaintiff, accordingly, cannot meet the prima facie
burden for his claim.

C.

Outback next argues that Coe cannot establish that the "safety
standard" requirement in subsection (C), which requires that the
specific unsafe working condition must have violated "a state or
federal safety statute, rule or regulation . . . or [] a commonly
accepted and well-known safety standard within the industry or

17

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

business of the employer." W. Va. Code. § 23-4-2(d)(2)(ii)(C). Coe contends that the condition of the kitchen floor violated (1) "Health Department Codes," (2) 29 C.F.R. 1910.22(a), and (3) "commonly accepted" industry standards.

"The requirement of subsection (C) may be met by alleging and proving that the employer violated a federal or state safety law or regulation or, alternatively, that it violated an industry or business safety standard." Handley v. Union Carbide Corp., 804 F.2d 265, 272 n.24 (4th Cir. 1986). Critically, as the deliberate intent statute specifies, a plaintiff may not simply rely on "a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions" to carry his burden. W. Va. Code. § 23-4-2(d)(2)(ii)(C). To the contrary, he must demonstrate that the specific unsafe working condition violated a "statute, rule, regulation or standard [that] was specifically applicable to the particular work and working condition involved." Id. (emphasis added). In other words, the standard asserted by the employee must "impose[] a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal," and be "capable of application to the specific type of work at issue." Ryan, 639 S.E.2d at 764.

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]**

Coe first argues that the condition of the floor violated "Health Department Codes" promulgated by the West Virginia Board of Health pursuant to W. Va. Code § 16-6-2.[4] Although the precise regulations upon which he relies are less than clear, he points to several citations Outback received from the Monongalia Department of Health on April 28, 2005, December 12, 2008, and March 29, 2010, for "floors being in poor repair" and, on March 29, 2010, for the roof being in "poor repair" and leaking on the floor. (Dkt. No. 46 at 10). The relevant citations involve violations of the 2005 FDA Food Code, which are incorporated by reference within W. Va. § 16-6-2's enabling regulations. See W. Va. C.S.R. § 64-17-3.

Pertinent to Coe's argument, the Health Department cited Outback for violations of FDA Food Code § 6-501.11, which provides that "physical facilities shall be maintained in good repair," and FDA Food Code § 6-501.12, which directs that "physical facilities

---

[4] This code section provides:

The West Virginia board of health shall make such rules and regulations, not inconsistent with law, as in their judgment are necessary to carry out the provisions of this article. The director of the state department of health shall enforce any orders made by the board of health and any laws of the State respecting pure food, so far as they relate to hotels and restaurants.

W. Va. Code § 16-6-2.

shall be cleaned as often as necessary to keep them clean." FDA Food Code § 6-501.11, .12 (2005), <u>available at</u> http://www.fda.gov /downloads/Food/FoodSafety/RetailFoodProtection/FoodCode /FoodCode2005/ucm123995.pdf. Regarding the roof leak, the Health Department referenced FDA Food Code § 6-202.16, which states that "[p]erimeter walls and roofs of a food establishment shall effectively protect the establishment from the weather and the entry of insects, rodents, and other animals." <u>Id.</u> at § 6-202.16. The ice machine leak was identified as a violation of FDA Food Code § 5-205.15, which requires that a plumbing system "shall be repaired according to law" and "maintained in good repair." <u>Id.</u> at § 5-205.15.

It is plain that these rules express "generalized goals" of safety and cleanliness as opposed to placing "specifically identifiable dut[ies] upon an employer" to take some predetermined action. <u>Ryan</u>, 639 S.E.2d at 764. As such, they are not rules or regulations that are "specifically applicable to the particular work and working condition involved" in this case. W. Va. Code § 23-4-2(d)(2)(ii)(C). Indeed, the FDA Food Code, as incorporated into the West Virginia statutory scheme, is a quintessential example of "a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions." W. Va.

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]**

Code § 23-4-2(d)(2)(ii)(C). As such, it cannot support a deliberate intent claim.

Coe's second argument, that the condition of the floor violated 29 C.F.R. 1910.22(a),[5] suffers from the same deficiency. That regulation, too, is made up of general rules related to safety and cleanliness, and has consequently been described as "just the sort of general provision[] that [is] specifically excluded from subsection (C)." Bennett v. Kroger Co., No. 97-1938, 1998 WL 398823, at *2 (4th Cir. June 15, 1998) (per curiam); see also Courtney v. BFS Retail and Commercial Operations, LLC., No. 3:07-0474, 2008 WL 2787718, at *3 (S.D. W. Va. July 16, 2008) ("[T]he Court is persuaded . . . that § 1910.22 cannot satisfy the

---

[5] This statute provides:

(a) Housekeeping.
(1)  All places of employment, passageways, storerooms, and service rooms shall be kept clean and orderly and in a sanitary condition.
(2)  The floor of every workroom shall be maintained in a clean and, so far as possible, a dry condition. Where wet processes are used, drainage shall be maintained, and false floors, platforms, mats, or other dry standing places should be provided where practicable.
(3)  To facilitate cleaning, every floor, working place, and passageway shall be kept free from protruding nails, splinters, holes, or loose boards.

29 C.F.R. 1910.22(a).

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

requirements of § 23-4-2(d)(2)(ii)(C)."). Again, even if Outback had violated this provision, such a violation would not satisfy subsection (C) of the statute and will not support a deliberate intent claim.

Coe's final argument is that the condition of the floors violated the "commonly accepted" industry standard of "maintain[ing] safe kitchen floors." (Dkt. No. 46 at 12). According to Coe, the source of this standard is "common sense." Id. He provides no further detail regarding the parameters or requirements of this alleged industry standard and, consequently, fails to show that its strictures are "commonly accepted" and "well-known" within the restaurant industry. W. Va. Code § 23-4-2 (d)(2)(ii)(C); see also Hoschar v. Appalachian Power Co., No. 3:11-00152, 2012 WL 6004151, at *9 (S.D. W. Va. 2012) ("Without evidence of common acceptance, the Court concludes that Plaintiff cannot make out a prima facie claim under the deliberate intention statute.").[6] Indeed, without any guidance as to what constitutes this nebulous "safe kitchen floor" standard, it would be impossible for the fact-

---

[6] Notably, the only evidence presented to the Court of an industry standard for cracked floor tiles is Outback's expert witness, Dr. Stanley Pulz, who opines that, even if one of Outback's floor tiles were completely missing, it would still comply with both OSHA and recognized industrial standards, which permit slight variations in working surface. (Dkt. No. 45-13 at 6).

22

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

finder to determine whether it actually existed, much less whether Outback had violated it. See generally W. Va. Code § 23-4-2(d)(2)(ii)(C) (requiring an "industry or business" standard to be "demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business"). As Coe's proposed standard is thus speculative and unsupported by any competent corroborating evidence, it is insufficient to meet his prima facie burden.

### D.

Outback next contends that there is no evidence that it "intentionally exposed" Coe to a specific unsafe working condition, as required by subsection (D). W. Va. Code § 23-4-2(d)(2)(ii)(D). Coe argues that he can meet this element because he has put forth a prima facie showing that Outback was aware that the floor was in disrepair and failed to take any meaningful action to correct it. (Dkt. No. 46 at 13).

To establish the fourth element of a deliberate intent action, however, there "must be some evidence that, with conscious awareness of the unsafe working condition . . ., an employee was directed to continue working in that same harmful environment." Tolley v. ACF Indus., Inc., 575 S.E.2d 158, 168 (W. Va. 2002). "In other words, this element, which is linked particularly with the

23

[actual knowledge] element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." Sias v. W-P Coal Co., 408 S.E.2d 321, 327 (W. Va. 1991). The employer need not specifically intend to injure the employee, but it must intend to expose the employee to the actually known specific unsafe working condition. Id.

In Tolley, the West Virginia Supreme Court of Appeals discussed the type of evidence necessary to establish this "intentional exposure" element:

> In Mayles, we found sufficient evidence was introduced where "management at the restaurant knew how the employees were disposing of the grease, knew that a previous employee had been injured by such practice, had received employee complaints about the practice, and still took no action to remedy the situation." 405 S.E.2d at 23. Similarly, in Sias, we held that the requisite intentional exposure prong had been met where the plaintiff produced evidence that his coal employer directed him to work in an unsafe mining area despite having actual knowledge of the probability and risk of a coal outburst in that particular section of the mine. 408 S.E.2d at 327-28.

Tolley, 575 S.E.2d at 167-68. Conversely, West Virginia's highest court has rejected an employee's deliberate intent claim where there was no evidence that he "was ordered, directed, or even had it suggested to him" that he was to engage in the unsafe conduct. Blevins, 408 S.E.2d at 389. At bottom, "[t]he 'deliberate intention' exception to the Workers' Compensation system is meant

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]

to deter the malicious employer, not to punish the stupid one." Deskins v. S.W. Jack Drilling Co., 600 S.E.2d 237, 243 (W. Va. 2004) (citing Helmick v. Potomac Edison Co., 406 S.E.2d 700, 705 (W. Va. 1991)).

Here, Coe has failed to put forth even a scintilla of evidence that Outback was "aware[] of the unsafe working condition" and had "directed [him] to continue working in that same harmful environment." Tolley, 575 S.E.2d at 168. Outback's simple failure to maintain the kitchen floor, without more, does not indicate that it "ordered, directed, or even . . . suggested to [Coe]" that he was to engage in unsafe conduct. Blevins, 408 S.E.2d at 389. The plaintiff's allegations, at most, indicate mere "inadvertent" or "negligent" failure on the part of Outback to properly maintain its floors. Sias, 408 S.E.2d at 327. Such allegations will not suffice to create a genuine issue of material fact on the issue of deliberate intent.

IV.

In conclusion, for the reasons discussed, the Court **GRANTS** the defendants' motion for summary judgment (dkt. no. 44)**, DISMISSES** the plaintiff's claims **WITH PREJUDICE,** and **ORDERS** that this case be

COE v. OUTBACK STEAKHOUSE, ET AL.                    1:11CV113

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 44]**

**DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court **DIRECTS** the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record.

DATED: January 10, 2013.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

26